## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA,**     :     **Criminal No. 3:23-cr-59**

**v.**                            :               **(JUDGE MANNION)**

**EDWARD DICKEY**                 :

## **MEMORANDUM**

On May 3, 2023, Defendant pled guilty pursuant to a written plea agreement with the government (Doc. 23) to one count of possession and distribution of child pornography in violation of 18 U.S.C. §2252(a)(2). According to the terms of the plea agreement, Defendant agreed to allow the court to determine the appropriate restitution for the identifiable victims in the images of child pornography he distributed. Seven identified victims have requested a total of $48,000[1] in restitution pursuant to 18 U.S.C. §2259(b)(2)(B). (Doc. 33.) Defendant disputes these amounts because *inter alia* the restitution requested is not supported by evidence of the amount of loss sustained by each victim as required by law. For the following reasons,

---

[1] This is the amount identified in Defendant's PSR. (Doc. 33.) However, Defendant asserts that 6 restitution claims, totaling around $55,000 are at issue in this case. The court notes this discrepancy but also recognizes that all amounts currently sought may be adjusted when the information requested herein is prepared. To the extent a dispute remains as to the number and amount of restitution claims after additional information is submitted the court will address such a dispute at that time.

the court agrees with Defendant's concerns and will order the government to submit additional information regarding its restitution request.

## I.    Background

From October 31, 2022, through February 7, 2023, agents with the Department of Homeland Security engaged in an undercover investigation targeting individuals involved in sexual exploitation of minors through peer-to-peer (P2P) file-sharing software. These agents found that Defendant was disseminating child pornography using P2P software. On March 7, 2023, agents executed a search warrant at Defendant's residence in Hazleton Pennsylvania. Two electronic devises containing images of child pornography were seized from the residence. Defendant admitted to having "a problem" with child pornography and provided details about his conduct. He specifically told agents that he used the dark web to search child pornography and used P2P software to download and share images and videos of child pornography.

From the images found in Defendant's possession agents identified 31 series associated with victims who requested to be contacted for the purposes of restitution: "AprilBlonde (April)," "At School," "Bowdog," "CalfTattoo," "CatchAWave," "cbaby1," "cbaby2," "cbaby4," "CBGirl,"

"Clearbeads," "Eyebrowsorange1," "Eyebrowsorange2," "Heather," "JBN Flowers1," "JBN Flowers2," "Jenny," "Lighthouse1," "Marineland1," "Mother Full 20121," "PD11," "RCA," "ShirtPlaid," "Sisters1," "SquareQuilt1," "Surfer Hair (Jessy)," "Sweet White Sugar," "Tara," "Vicky (Lily)," "ZigZagBrown," "BrightPinkToddler," and "Super Hero Boy 1."

In preparation of Defendant's presentence report, the United States Probation Office received victim impact statements from the government requesting restitution from seven victims.[2] With respect to the "Jenny" series, $10,000 restitution has been requested. In reference to "Marineland1 (Sarah)" series, $10,000 restitution has been requested. With respect to the "Lighthouse1 (Maureen)" series, $10,000 restitution has been requested. In reference to the "Surfer Hair (Jessy)" series, $5,000 has been requested. With respect to the "Sweet White Sugar (Pia)" series, $5,000 restitution has been requested. In reference to "PD11" series, $5,000 has been requested. With respect to "MotherFull20121" series, the victim's parents are requesting "all restitution that is available."

---

[2] According to the PSR the victims in the "AprilBlonde (April)," "At School (Violet)," "Tara," "BrightPinkToddler," "Super Hero Boy 1," "CBGirl," "JBNFlowers2 (Jen) (Ivy)," "Vicky (Lily)," and "CatchAWave" series have not requested a specific amount of restitution. To the extent any of these victims also want to seek restitution the information requested herein must be submitted on their behalf's as well.

## II.     Legal Standard

The Violence Against Women Act provides that a district court sentencing a defendant who knowingly possessed child pornography in violation of 18 U.S.C. §2252 shall order the defendant "to pay the victim ... the full amount of the victim's losses as determined by the court." §2259(b)(1). The categories of covered losses defined in §2259(b)(3) include incurred and anticipated losses and expenses such as lost income, medical expenses, and reasonable attorney's fees. From this amount the court shall "deduct the amount the victim received in defined monetary assistance" from the Child Pornography Victims Reserve as defined in §2259(d)(2)(C). Additionally pursuant to §2259(b)(2)(B), "the court shall order restitution in an amount that reflects the defendant's relative role in the casual process that underlies the victim's losses, but which is no less than $3,000." The liability of a Defendant to pay restitution is terminated once the given victim "has received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under [§2259]." §2259(b)(2)(C)

When a defendant is convicted of distributing child pornography, restitution is mandatory and any victim who appeared in the images

distributed by the defendant may seek restitution from that defendant. However, "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. §3664(e). *See also United States v. Graham,* 72 F.3d 352, 356–57 (3d Cir. 1995) (citing §3664(e) ("The Government must prove, by a preponderance of the evidence, the amount of loss sustained by the victim.") As such a court "must point to the evidence in the record supporting the calculation of loss to the victim[ ]," based on "specific findings regarding the factual issues." *Id*. The Third Circuit has overturned restitution awards where the government did not present specific evidence of the victim's loss and in turn it was not able to discern how the district court arrived at the awarded amount. For example, in *United States v. Dagostino*, 520 Fed. App'x 90, 92 (3d Cir. 2013) the Third Circuit found:

> The statement [submitted by the government] contained a devastating portrayal of an adult haunted by grotesque and unjustifiable wrongs done to her as a child. We do not diminish the toll this has taken on [the victim]. We share the District Court's understandable and, in fact, quite natural inclination to provide some compensation for the harm sustained by her. Unfortunately, however, the Government's failure to submit

timely some evidence by which to measure [the victim's] financial loss precludes us from affirming the District Court's modest restitution order. As such, our precedent requires us to vacate without remand the $5,000 restitution award.

Other circuits have adopted similar approaches. *See e.g., United States v. Julian*, 242 F.3d 1245, 1248 (10th Cir. 2001) ("[R]estitution orders pertaining to costs associated with medical and related services must be specific and contain 'details as to dollars not generalities,' and ... the district court must support its restitution order with findings of fact in the record.")

Furthermore, the Supreme Court has stated that determining the proper amount of restitution "involves the use of discretion and sound judgment." *Paroline v. United States*, 572 U.S. 434, 459 (2014).  To that end that Court has articulated factors that a district court may follow when setting the amount of restitution. *Id.* at 459–60. The factors include:

[T]he number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course,

- 6 -

never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 460. The "factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id.* In applying these factors, the Third Circuit has affirmed restitution awards where the government provided the district court a "thorough memorandum in support of its proposed restitution amount" and "detailed *Paroline's* guidance." *United States v. Restitullo*, 796 F. App'x 76, 84 (3d Cir. 2019).

## III.    Discussion

Here the government has not yet come close to carrying its burden. Instead of providing a detailed memorandum as to each victim, it has merely dumped information on the court without making any effort to specify or direct the court's attention to the required particular factors the court must consider. Like in *Dagostino* the victim impact statements here detail unspeakable

crimes committed to vulnerable children often by one of their own biological parents, but they do not quantify incurred or anticipated losses and expenses. For example, with regards to the victim from the "Jenny" series the government seeks $10,000 on her behalf but submits only the victim's impact statement that references attending therapy at one point in time but then stopping. No other explanation is offered to explain whether the $10,000 requested is based on victim's prior therapy costs, anticipated costs if she chooses to go back to therapy, or some other expense not mentioned in her statement. Likewise, regarding the victim from the "Lighthouse1" series the government also seeks $10,000 in restitution and has only submitted a victim impact statement that generally states similarly situated victims need therapy but does not even say whether the victim herself has attended therapy let alone incurred other costs totaling $10,000.

It is understandable from the horrors depicted in these statements that an amount in restitution greater than the statutory minimum of $3,000 may be appropriate but the government has also failed to bolster these statements with the necessary supporting documents. For example, the victim from the "Marineland1" writes in her statement that she cannot afford therapy because it costs at least $100 a visit and she lost her job because of an unspecified medical condition. Such circumstances indicate potential

general losses in excess of $3,000 but the government again baldly seeks $10,000 without defining exactly how much it would cost for the victim to regularly attend therapy or specifying the medical condition (not to mention its related costs) that prevent her from working.  As such the government is doing her a great disservice by not supporting her statement with information that would allow the court to award an appropriate amount of restitution.

Of the seven victims seeking restitution, the government has only submitted detailed information with regards to the general losses of the victim from the "PD11" series by attaching a letter from the victim's counsel, Jones Day, that quantifies the victim's current and anticipated therapy costs. The letter details how often the victim attends therapy, how much each session costs, and how much her parents' insurance contributes towards each visit.[3] This is the level of specificity that is necessary for determining the general losses of each and every victim seeking restitution. Still this information should be converted by the government from letter to itemized list format so the court can easily review the information. It should also be supported by

_____

[3] While the letter submitted by Jones Day contains the appropriate level of specificity for the court to determine the victim's general losses, it also contains a mathematical error in that it seeks $17,707.67 for the addition of the victim to her mother's health insurance plan and $18,880.00 for copays under that plan for a total $26,587.67 even though the sum of the specified costs is in fact $36,587.67.

actual therapy bills that verify the amounts claimed. Additionally, the government should indicate whether the victim has received any funds from the Child Pornography Victims Reserve that have or will offset her therapy costs.

The Jones Day letter is likewise the only statement submitted by the government that is particularized to the present Defendant. Conversely the victim impact statement submitted by the parent of the victim from the "Sweet Sugar Pie" series contains a headnote with a completely different case caption.[4] This letter also expresses the frustration of the victim's mother at having to explain or justify her child's entitlement to restitution. While the court does not dispute the victim's entitlement to restitution based on the severe abuse she suffered, the law requires a detailed explanation of a victim's general losses to justify a restitution award. This particular letter also references that the victim's parent seeks restitution for "four children with different needs at different times." To the extent the restitution sought by the government for this victim includes costs related to the victim's non-victim

---

[4] The government has submitted multiple statements of victims not seeking restitution with the same wrong caption from a prior child pornography case before this court, *USA v. Griffith*. As a result, it appears the government resubmitted the same documents from that case here. Such carelessness is concerning to the court.

siblings the government also needs to explain how such costs are recoverable under the statute.

Similarly, the statements submitted by the parents of the last two victims for whom the government seeks restitution also seem to reference costs borne by the victim's parents not the victims themselves. For example, the mother of the victim from the "Surfer Hair" series indicates that she lost her job because of the time she had to spend on the investigation into the crime's committed against her son and his subsequent medical treatment. The court recognizes the obvious hardship such a loss could impose on the victim and his family, but the government provides the court with no legal authority that supports awarding restitution based on these indirect damages. The same is true of the parents of the victim from the "MotherFull20121" series who seek restitution to help them save for their victim daughter's college education.[5] The court again recognizes that

---

[5] Regarding the victim from this series the government also submits a document that states "the only restitution information available, at this time, is mentioned within the [victim impact statement] itself" and "[t]he parents are aware that the lack of supporting documentation regarding losses could probit restitution from being ordered." Given the above described caselaw clearly stating that a victim impact statement (without detailed costs) alone is not an adequate basis for a court to award restitution, this document begs the question of why the government is even asking the court to award restitution beyond other than the statutory minimum for this victim. If the government wants to ask the court for restitution in excess of $3,000 it must

*(footnote continued on next page)*

restitution for such costs could be valuable to the victim but once again the government provides no legal authority supporting the inclusion of college savings in its award.

Accordingly, the government has failed to prove by a preponderance of the evidence any of the victim's general losses nor as it provided the court with the amount of defined monetary assistance each of these victims as received and that the court must deduct from each of the victim's general losses. Despite these failures, the court, in the interest of adequately compensating each victim for Defendant's crimes against them, will give the government another chance to carry its burden. Therefore, the government will be ordered to provide a detailed breakdown of each victim's general losses and the defined monetary assistance they have received (if any) from the Child Pornography Victims Reserve. For any medical expenses including therapy costs claimed by a victim, the government will be ordered to subtract the amount of those costs covered by the victim or their parents' insurance (or medical assistance) and support those expenses with actual bills from the victim's medical provider and/or insurer. For any indirect cost, such as those borne by a victim's family members, the government will also be

---

do so as prescribed by law. The fact that the crimes at issue here are especially heinous and the victims particularly sympathetic does not mean the government can simply ignore the applicable statute and caselaw.

ordered to provide the court with legal briefing about the statutory basis for including such costs in its award. And for any attorneys' fees sought by a victim's private attorneys the government will be required to submit unredacted copies of those attorneys' bills for *in camera* inspection.[6]

Furthermore, to date the government has not even referenced the *Paroline* factors let alone submitted a thorough memorandum briefing them. Absent such briefing, the court has no information from which it can determine the Defendant's relative causal role in each victim's injuries. The court recognizes that in this particular case some of the *Paroline* factors are self-evident. For example, the Defendant pled guilty to distributing child pornography involving the victims. Thus, it is undisputed that Defendant did distribute images of the victims. In originally articulating the *Paroline* factors the Supreme Court also recognized that some of the factors may be difficult or in fact impossible to quantify. For example, the Court conceded that most

---

[6] While §2259(b)(2)(B) authorizes the recovery of attorney's fees up to 15% the amount of restitution awarded, the court will not automatically award that amount. Nor will it award a lower amount that is still disproportionate to the work performed in furtherance of the given restitution request. For example, the court will not award more than copying fees to attorneys who submitted only outdated copies of victim impact statements, generalized as to all potential defendants or that don't even include this particular case's caption.

of the offenders involved will never be caught. So, an estimate about the number of likely offenders involved is highly speculative.

Nonetheless, the other *Paroline* factors are highly relevant and indeed necessary to the court's analysis. Is the Defendant one of 10 or 1000 defendants who have been found to have contributed to a given victim's general losses? Did the Defendant have any connection to the production of any of the images involving any of the victims? Did the Defendant distribute 1 or 100 images of a given victim. The government seeks twice as much restitution for some victims than it does for others. Is that because the Defendant distributed twice as many images of some victims as he did other victims? Without any briefing on the *Paroline* factors, let lone briefing as to each victim, the court cannot answer these questions and is unable to tailor its award based on Defendant's relative causal role in each victims' general losses. If the Defendant here contributed more to one victim's losses than he did another, the former should be awarded more restitution and the government's failure to brief the *Paroline* factors is again a great disservice to the victims most wronged by the Defendant's conduct.

Therefore, in addition to providing a detailed breakdown of each victim's general losses and defined monetary assistance, the government will be ordered to brief the relevant *Paroline* factors as to each victim it

requests restitution for. In briefing the first *Paroline* factor, the number of past criminal defendants found to have contributed to the victim's general losses, the government will also be ordered to provide the amounts in restitution awarded to each victim by other courts and the amount of restitution each victim has already collected from other defendants. To the extent a victim has been awarded restitution from other defendants from different series that included their images, the government is also required to include those amounts as the use of pseudonyms to protect victim's identities as well as redactions in victim's statement make it impossible for the court to tell whether the same victim is seeking restitution for multiple different series.

The court understands that the information requested herein is substantial, but that fact does not relieve the government of its obligations to the court and victims.[7] Unfortunately the government has been allowed to dump information on the court and request seemingly arbitrary amounts in restitution leaving the court to guess at what the appropriate and proportional

---

[7] While the burden in requesting an award of restitution from the court is the government's responsibility, the victim's private attorneys are also responsible for helping the government carry its burden. Two of the victims' attorneys, Carol Hepburn (Marineland1) and Deborah Bianco (Surfer Hair), who submitted letters on victim's behalf wrote in their letters that they can be contacted with any question. The government should contact them and all other counsel of record for each victim in preparing the information requested herein.

amount each victim is entitled to receive. This approach to restitution is not in the best interest of victims, the Defendant's due process rights, the court's time, and contrary to clearly established law.

## IV.    Conclusion

Based on the aforesaid the government will be ordered to provide additional information to the court as detailed in this memorandum and the order following this memorandum.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 31, 2024**
23-59-01