FILED
SCRANTON
OCT 24 2024
PER _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:23-cr-59 |
| v. | : | (JUDGE MANNION) |
| EDWARD DICKEY | : | |

### MEMORANDUM

Presently before the court are the parties' briefs on the issue of restitution. For the reasons set forth below, the court will order Defendant to pay restitution of $3,000, the mandatory minimum required by statute, to each of the victims seeking restitution, as that amount reasonably reflects the Defendant's relative role in the causal process that underlies the victims' losses.

### I.  Background

The court set fourth the background of this case in its prior July 31, 2024, memorandum and need not repeat it fully herein. (Doc. 42). In short, Defendant has pled guilty to one count of possession and distribution of child pornography in violation of 18 U.S.C. §2252(a)(2) but disputes the amount of restitution requested by the government on behalf of his victims because those requests are not supported by evidence of the loss sustained by each victim as required by law and violate his rights under the Double Jeopardy

Clause. As explained at length in the court's July 31, 2024, memorandum, the court agreed with Defendant on the former issue, and ordered the government to submit additional evidence of each victim's losses. The court also ordered the government to brief the latter issue. The government has complied with both orders and the matter is now ripe for review.

II. **Legal Standard**

As stated in the court's July 31, 2024, memorandum, the Violence Against Women Act provides that a district court sentencing a defendant who knowingly possessed child pornography in violation of 18 U.S.C. §2252 shall order the defendant "to pay the victim ... the full amount of the victim's losses as determined by the court." §2259(b)(1). The categories of covered losses defined in §2259(b)(3) include incurred and anticipated losses and expenses such as lost income, medical expenses, and reasonable attorney's fees. From this amount the court shall "deduct the amount the victim received in defined monetary assistance" from the Child Pornography Victims Reserve as defined in §2259(d)(2)(C). Additionally pursuant to §2259(b)(2)(B), "the court shall order restitution in an amount that reflects the defendant's relative role in the casual process that underlies the victim's losses, but which is no less than $3,000." The liability of a Defendant to pay restitution is terminated once the given victim "has received restitution in the full amount of the

victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under [§2259]." §2259(b)(2)(C)

When a defendant is convicted of distributing child pornography, restitution is mandatory and any victim who appeared in the images distributed by the defendant may seek restitution from that defendant. However, "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. §3664(e). *See also United States v. Graham*, 72 F.3d 352, 356–57 (3d Cir. 1995) (citing §3664(e) ("The Government must prove, by a preponderance of the evidence, the amount of loss sustained by the victim.") As such a court "must point to the evidence in the record supporting the calculation of loss to the victim[ ]," based on "specific findings regarding the factual issues." *Id*. The Third Circuit has overturned restitution awards where the government did not present specific evidence of the victim's loss and in turn it was not able to discern how the district court arrived at the awarded amount. For example, in *United States v. Dagostino*, 520 Fed. App'x 90, 92 (3d Cir. 2013) the Third Circuit found:

> The statement [submitted by the government] contained a devastating portrayal of an adult haunted by grotesque and unjustifiable wrongs done to her as a child. We do not diminish the toll this has taken on [the victim]. We share the District

> Court's understandable and, in fact, quite natural inclination to provide some compensation for the harm sustained by her. Unfortunately, however, the Government's failure to submit timely some evidence by which to measure [the victim's] financial loss precludes us from affirming the District Court's modest restitution order. As such, our precedent requires us to vacate without remand the $5,000 restitution award.

Other circuits have adopted similar approaches. *See e.g., United States v. Julian*, 242 F.3d 1245, 1248 (10th Cir. 2001) ("[R]estitution orders pertaining to costs associated with medical and related services must be specific and contain 'details as to dollars not generalities,' and ... the district court must support its restitution order with findings of fact in the record.")

Furthermore, the Supreme Court has stated that determining the proper amount of restitution "involves the use of discretion and sound judgment." *Paroline v. United States*, 572 U.S. 434, 459 (2014). To that end that Court has articulated factors that a district court may follow when setting the amount of restitution. *Id.* at 459–60. The factors include:

> [T]he number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 460. The "factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id.* In applying these factors, the Third Circuit has affirmed restitution awards where the government provided the district court a "thorough memorandum in support of its proposed restitution amount" and "detailed *Paroline's* guidance." *United States v. Restitullo*, 796 F. App'x 76, 84 (3d Cir. 2019).

### III. Discussion

Although the government's initial submission did not come close to carrying its burden, it has since submitted a thorough memorandum in support of its proposed restitution amount. However, before discussing each victim's individual restitution requests, the court will discuss Defendant's Double Jeopardy argument since it applies to all requests.

**A. Defendant's Double Jeopardy Argument**

In his sentencing memorandum Defendant argues that Section 2259(b)(2) exposes him to a potential Double Jeopardy Clause violation. Specifically, Defendant argues that because at some point after he is sentenced, another court may determine a greater loss value for a particular victim, his sentencing obligation to pay restitution may continue longer than

the court intended. *See United States v. Norwood*, 49 F.4th 189 (3d. Cir. 2022) ([I]mposing the same penalty twice for a single offense without giving credit for the portion of a sentence already satisfied is the very definition of a Double Jeopardy violation.") As such Defendant at least asks the court, to "specify in its restitution order that his obligation to make restitution payments will cease when the total amount of the victim's losses as determined by this Court have been received by the victim." (Doc. 35 p. 7). Likewise, he asks that the court's restitution order provide a mechanism for him to determine the amount of restitution his victims have recovered after sentencing.

In response the government argues that while there is potential for another court to find a higher total restitution amount because the victims of child pornography are continuously revictimized by the ongoing distribution of their images, the actual amount Defendant owes will never increase and does not penalize him twice. Still the government recognizes Defendant's concern that his restitution obligation may last longer in time than this court intended based on the orders of other courts, and therefore does not oppose Defendant's request that the court specify in its order that his restitution obligation cease when the victims' losses as determined by this court have been recovered. That said the government, questions the practicality of the court imposing a mechanism for Defendant to determine the amount of

restitution collected by his victims after sentencing as well as the court's authority to direct victims to provide such information because they are victims and not parties to his action.

The court agrees with the government. Section 2259 does not require Defendant to pay his ordered restitution amount twice and whatever money he pays towards his court ordered restitution amount will be credited to him. The orders of other courts in other cases will not require Defendant to pay more than the amount ordered by this court, but they may require Defendant to pay more *of* the amount ordered by this court by increasing the duration of time he is required to make payments towards that amount. The amount in restitution ordered by this court is determined and awarded in full at the time the court issues its order. Defendant, however, is not immediately required to pay that amount in full but is instead allowed to pay the amount gradually in installments. Contributions from other defendants in other cases may allow Defendant's victims to recover their greatest total losses as determined at the time of sentencing before Defendant pays the full amount of restitution ordered by this court. If another court later determines a greater loss amount for Defendant's victims, the amount of time Defendant must keep making payments towards his restitution award could increase but the amount of restitution Defendant pays will not.

For example, if at the time of sentencing the greatest value of a victim's loss is determined to be $1,000,000 and this court orders Defendant to pay $3,000 towards that sum, but Defendant pays only $1,000 before the victim recovers $1,000,000 across all cases, then Defendant would pay $2,000 less in restitution than was ordered by this court. However, if another court later determines that same victim's loss to be $2,000,000 and Defendant has still not paid the $3,000 ordered by this court, then he will have to continue making payments until that victim recovers $2,000,000 across all cases or Defendant pays the full $3,000, whichever comes first. If another court later determines that same victim's loss to be $3,000,000 and Defendant has already paid the full $3,000 ordered by this court, then Defendant will not have to make any additional payments.

Accordingly, the court finds that Section 2259 does not violate Defendant's rights under the Double Jeopardy clause.[1] Furthermore, given that the orders of other courts will not increase the amount of restitution this Defendant will pay, the court does not find it appropriate to limit his restitution

---

[1] The court also notes that it is premature for Defendant to raise a Double Jeopardy Clause violation. Defendants cannot prospectively claim a Double Jeopardy Clause violation based on the mere potential of being subjected to the same punishment twice for the same offense. To the extent Defendant is subjected to punishment for this case twice he is free to again claim a Double Jeopardy Clause violation at the time he is actually subjected to the second punishment.

payment to a particular time. Section 2259(b)(2)(B) dictates that "the court shall order restitution in an amount that reflects the defendant's *relative* role in the casual process that underlies the victim's losses, but which is no less than $3,000." (emphasis added). Thus, limiting Defendant's restitution payments to only the time when the greatest loss amount as determined at the time of sentencing remains outstanding could lead Defendant to pay less than the statutory mandatory minimum of $3,000. The court is required to follow Congress' dictates as specified in Section 2259(b)(2)(B) and cannot award an amount less than $3,000. Defendant's liability to pay restitution to his victims seeking restitution will terminate when the amount awarded by this court is paid in full.

### B. The Government's Restitution Request

In accordance with its July 31, 2024, memorandum detailing the deficiencies in the government's initial restitution request, the court ordered the government to provide additional specific information for each of the victims seeking restitution in this case. While the government has complied with this order by both supplying additional information, to the extent they could gather it, and a thorough memorandum summarizing that information, the court finds that that information still does not support a restitution award in excess of the statutory mandatory minimum of $3,000 for any victim.

The government seeks restitution for victims from 12 different series[2] as follows: $3,000 for the Aprilblonde series, $3,000 for the JBN Flowers 1 series, $3,000 for JBN Flowers 2 series, $10,000 for the Jenny series, $10,000 for the Lighthouse 1 series, $10,000 for the Marineland 1 series, $5,000 for the PD11 series, $5,000 for the Surfer Hair series, $5,000 for the Sweet White Sugar series, $10,000 for the Tara series, $10,000 for the Vicky series, and $3,000 for the Mother Full series.

Nonetheless as noted above the court must determine each victims' total losses, subtract any defined compensation from the Child Pornography Victim's Reserve to a victim from that amount, and order restitution in an amount that reflects the defendant's *relative* role in causing that difference but is not less than $3,000 using the *Paroline* factors. The government must prove, by a preponderance of the evidence, the amount of loss sustained by

---

[2] The court notes that given the understandable use of pseudonyms to identify the victims of child pornography it is not clear the victims from each of the pertinent series here are different individuals. The court assumes that different pseudonyms represent different individuals but despite different victim pseudonyms (Ivy and Jen) being respectively associated with the JBN Flowers 1 and 2 series, the claimed losses for these series are exactly the same. To the extent the victim(s) from these series are the same, the government is asked to advise the court of that fact, and whether its permissible for the court to award restitution to the same victim twice, even if their loss is from two different series.

the victim. Here the government ventures to do this by submitting the following materials regarding each series.

With respect to the Aprilblonde series the government submits documents indicating $2,703,266 in current losses, $226,375 in anticipated losses, and $900,998 in attorney's fees. With respect to the JBN Flowers 1 and 2 series the government submits documents indicating $192,000 in anticipated losses, and $63,993 attorney's fees. With respect to the Jenny series the government submits documents indicating aggregate anticipated losses between $1,753,972 and $3,002,606 net anticipated wages and benefits as well as $2,169,251.84 in attorney's fees. With respect to the Lighthouse 1 series the government submits documents indicating estimated total costs and expenses in excess of $1,233,250 including attorney's fees. With respect to the Marineland 1 series the government submits documents indicating aggregate reported losses of $2,758,335, which does not include any request for attorney's fees. With respect to the PD11 series, the government submits documents indicating anticipated losses of $266,587.67, which does not include any request for attorney's fees. With respect to the Surfer Hair series the government submits documents indicating current and anticipated losses in excess of $50,000 and attorney's fees in excess of $20,000. With regard to the Sweet White Sugar series the

government submits documents indicating anticipated losses between $1,086,000 and $1,723,000 as well as current attorney's fees in excess of $30,000. With regard to the Tara series the government submits documents indicating aggregate losses at or in excess of $1,200,000 to $1,500,000, which does not include any request for attorney's fees. With regard to the Vicky series the government submits documents indicating aggregated losses of $6,008,536.29 not including any attorney's fees allowed under statute. Finally, with regard to the Mother Full series the government was not able to obtain documents indicating losses of any specific amount.

Regarding defined compensation from the Child Pornography Victim's Reserve the government explains that the creation of the Child Pornography Victim's Reserve Benefit Assistance Fund was authorized on December 7, 2018, but that the fund has yet to be made operational. As such the amount any victim as received from the fund is $0 and there is no difference after subtracting this amount from each victim's losses.

Regarding the first *Paroline* factor the government submits documentation of all restitution orders from cases involving each of the relevant series *reported* by AUSAs across the county as follows: 3,949 restitution orders for the Aprilblonde series, 3,949 for the JBN Flowers 1, 3,949 for the JBN Flowers 2 series, 860 for the Jenny series, 484 for the

Lighthouse 1 series, 993 for the Marineland 1 series, 70 for the PD11 series, 201 for the Surfer Hair series, 574 for the Tara series, and 1,662 for the Vicky series. Concerningly, counsel for the victim from the PD11 series list 230 restitution orders from other cases, which indicates to the court that AUSAs across the county are significantly under reporting restitution orders in child pornography cases which make it difficult or impossible for courts to accurately assess restitution in such cases as required by the Supreme Court's ruling in *Paroline*.

Also regarding this factor, the government submits the following amounts of restitution already collected by victims from all Defendants: $306,304 for the Aprilblonde series, $54,877 for the JBN Flowers 1 series, $10,759 for the JBM Flowers 2 series, $832,048 for the Jenny series, $454,876.79 for the Lighthouse 1 series, $1,435,396.67 for the Marineland 1 series, $50,464.37 for the PD11 series, $967,254 for the Surfer Hair series, $1,131,586.20 for the Sweet White Sugar series, $573,065.48 for the Tara series, $3,006,309.78 for the Vicky series.

Regarding the second and third *Paroline* factors, estimates of the number of offenders involved in disseminating a given series, the government asserts that a reasonable estimate of possible future offenders, who will contribute to each victim's general losses is not possible. The court

agrees given that the global extent child pornography images are trafficked on the internet and small fraction of offenders who are actually prosecuted by law enforcement. *See United States v. Berry*, ("information relied upon at sentencing must have sufficient indicia of reliability to support its probable accuracy.") The information available for these *Paroline* factor lack such indicia and must not be considered.

Regarding the fourth *Paroline* factor, government submits that there is no evidence Defendant had any connection to the production of any of these series. But regarding the fifth factor, the government does submit the number of files per pertinent victim in Defendant's possession, were as follows Aprilblonde (7); JBN Flowers 1 (5); JBN Flowers 2 (2), Jenny (2), Lighthouse 1 (3); Marineland 1 (1); PD11 (1); Surfer Hair (1); Sweet White Sugar (4); Tara (9); Vicky (16); and Mother Full (3).

While the above described submissions are an improvement over the government's initial submission, they still do not justify an award over the statutory minimum of $3,000 for any victim. Most of the claimed losses are based on anticipated losses and in turn cannot be supported by bills or other objective documentation but are instead mainly supported by subjective expert reports of dubious formation. The court is reluctant to blindly accept the word of experts who have been commissioned by the victims' attorneys

and whose credibility has never been tested. More concerningly, the requested attorney's fees are not adequately supported by evidence of the actual work the victim's attorneys have expended on the given victim's behalf, which the court notes is likely minimal since many of the victims' counsels submit the same generic, and often outdated, documents in every case.

Even if you accept the victim's stated losses as true and disregard the amount of restitution already collected, which is substantial, then divide that number by only the reported number of restitution awards, which the court already noted is undoubtedly far less than the actual number, the quotient or loss per defendant would still be less, not more than, the statutory minimum. For example, if you assume the aggregated stated losses of $2,758,335 from the Marineland 1 series is correct and divide that number by the number of reported restitution orders, 993, you get $2777.78. Nonetheless counsel for the victim from that series seeks $10,000 from Defendant here and presumably in every case involving this series. Based on the data submitted by the government, amounts of that size have been awarded by other courts with the effect of decreasing Defendant's proportional share of the losses. The above calculation also assumes that each defendant contributed equally to the victim's losses. In the likely scenario other defendants contributed

more to the victim's losses by distributing even more images than Defendant did or worse yet by producing those images, those defendants share would be even greater and in turn Defendant's share would be even less. Thus, even construed in the light most favorable to the victims the court cannot justify awarding an amount in excess of the statutory mandatory minimum.

Accordingly, the court will accept the aggregated losses claimed by the government, but only order Defendant to pay the statutory mandatory minimum of $3,000 to each victim seeking restitution. The court makes this determination as to the victims' total losses with reluctance because of its concerns with the objectivity of the victims' own quantifications. That said Defendant has not provided the court with any alternative figures and the court cannot arbitrarily assign a number to each victims' losses on its own. Still to the extent any of the victims provide their losses as a range the court has determined losses to be the bottom of that range because of the court's concerns with the accuracy of those calculations. In light of the foregoing, the court will order the Defendant to pay $3,000 for each series, because as stated above that amount reflects, and in reality may exceed, Defendant's relative role in the victims losses, but is nonetheless the statutory mandatory minimum.

## IV. Conclusion

In light of the foregoing, the court will determine the total losses of each victim seeking restitution to be as follows: Aprilblonde ($3,830,639.00), JBN Flowers 1 ($255,993), JBN Flowers 2 ($255,993), Jenny ($3,823,044.84), Lighthouse 1 ($1,033,250.00), Marineland 1 ($2,758,335.00), PD11 ($266,587.67), Surfer Hair ($70,000), Sweet White Sugar ($1,116,000.00), Tara ($1,200,000), and Vicky ($6,008,536.29). The court will determine Defendant's relative causal role in each of these losses to be $3,000, the statutory mandatory minimum, and will order him to pay restitution in that amount to the victims from all 12 series cited herein for a total of $36,000. As this amount is a mandatory minimum, and due and owing today, Defendant will be ordered to make payments toward this amount until it is paid in full irrespective of the orders of other courts. An appropriate order and judgment follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 24, 2024**
23-59-02